Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

No. 04-08-00312-CR

Jermaine **GUERRA**,
Appellant

v.

**STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-5005
Honorable Robert R. Barton, Judge Presiding[1]

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed: October 28, 2009

AFFIRMED

Jermaine Guerra was found guilty by a jury of attempted capital murder and sentenced by the

court to five years in prison. Guerra appeals the judgment, arguing the evidence is legally and

factually insufficient to support the verdict, the trial court erred in failing to instruct the jury on a

---

[1] Senior Judge, sitting by assignment

lesser included offense, and the court abused its discretion by reading testimony to the jury during deliberations. We affirm the judgment of the trial court.

## BACKGROUND

On the morning of April 4, 2007, Guerra was in the parking lot of a video store in San Antonio. The store, owned by John Morales, had been burglarized several times in the recent past. Morales's landlord testified he saw Guerra at the front door of the store and Guerra appeared to be gesturing to someone inside the store. The store was not open for business. The landlord called Morales, who in turn called police and reported a possible burglary.

Morales drove to his store and approached Guerra. According to Morales, Guerra said he had been waiting all morning and wanted to go inside the store. Morales told Guerra the store was not yet open for business, but Guerra kept insisting he wanted to go inside the store. Morales testified Guerra was dressed in baggy jeans, carried a backpack, and seemed nervous.

San Antonio Police Officer Michael Castano testified he received a dispatch to go to the video store for a possible burglary in progress. When he arrived at the store in his marked patrol vehicle, he saw two men standing near the front door of the store. Officer Castano knew the store had been burglarized a month earlier and had met Morales in connection with that crime. As he approached the men, Officer Castano recognized Morales. He told the men to come towards him and then saw Guerra put his hand in his pocket. The officer told Guerra to remove his hand, and Guerra complied. Officer Castano then told Guerra to place his hands on the patrol car, but Guerra instead put his hand in his pocket once again. Guerra pulled a "wad" of money from his pocket and pushed it toward the officer. Officer Castano testified he was concerned that Guerra was not complying with his requests and that Guerra was looking about as if assessing the scene and not

focusing on him. Officer Castano stepped towards Guerra and grabbed his left wrist. Guerra dropped his right hand toward his right pocket, pulled away from the officer, and started yelling.

When Morales saw Guerra attempt to pull away from Officer Castano, Morales grabbed Guerra's right arm. Morales testified he felt "something hard" on Guerra's right side. Morales lifted Guerra's shirt and saw part of what was later determined to be a modified AR-15 rifle.[2] Guerra grabbed the "butt" of the weapon and started yelling "I'll kill you. I'll kill you both." Morales grabbed Guerra's right hand and tried to remove Guerra's grip on the weapon. Officer Castano testified he believed Guerra was attempting to draw the weapon, but it was caught on part of his clothing. A struggle ensued, with the three men falling to the ground several times and then getting up as they wrestled for control of the weapon. Both Morales and Officer Castano testified Guerra continued to scream his intent to kill them. Fearing Guerra would be able to use his weapon, Officer Castano drew his weapon. He pushed Guerra away from him and told Morales to get behind him. Morales had his hand on Guerra's weapon and decided to pull on it one last time. Morales was able to yank the weapon free from Guerra's pants, and it fell to the ground. Morales testified the magazine was attached to the weapon when it came out of Guerra's pants, but the magazine detached from the weapon when it hit the ground. Officer Castano holstered his weapon and he and Morales tackled Guerra to the ground. Officer Castano was then able to restrain Guerra with a pair of handcuffs. Although restrained, Guerra continued to yell and struggle with the men. Other officers arrived and took control of the scene.

---

[2] Officer Castano testified Guerra's jeans had been cut, so the weapon could be slipped inside his pants. Most of the weapon was concealed by Guerra's clothes.

Cynthia Hunt, a crime scene technician for the San Antonio Police Department, processed the crime scene. Hunt testified she found a modified AR-15. The weapon's barrel had been sawed off to shorten its overall length. No round was chambered in the weapon. Hunt testified she found a magazine loaded with twenty-six rounds near the weapon. Six fully loaded magazines, each containing thirty rounds, and sixty-five loose rounds of ammunition were found in Guerra's backpack. Dale Justice, a forensic scientist employed by the Bexar County Crime Lab in the firearms section, testified the AR-15 had been modified to act as a single-shot rather than a semi-automatic weapon. He explained that a shooter would have to manually load a new round each time he wanted to fire the single-shot firearm; whereas, a semi-automatic firearm mechanically loads a new round without any action on the part of the shooter. Justice tested the weapon and found it was fully functional and capable of firing a bullet. He further testified that even in its modified condition, the weapon could fire thirty rounds in under thirty seconds. Justice also confirmed that the weapon striking the ground could cause the magazine to separate from the weapon.

## LEGAL AND FACTUAL SUFFICIENCY

Guerra first complains the evidence is legally and factually insufficient to prove he had the requisite intent to kill Officer Castano. Guerra contends that because no round was chambered in the weapon and the magazine was found separated from the weapon, "there was no way [he] could have fired the weapon." Guerra asserts he knew he could not fire the weapon and argues he therefore could not have formed the intent to kill Officer Castano. We disagree.

Morales testified Guerra had his hand on the end of the weapon, and was trying to pull the weapon out of his pants. Morales also testified that when he was finally able to get his hand on the weapon and pull it out of Guerra's pants, the magazine was attached to the weapon. Although there

was no round chambered in the weapon, Justice testified a round could be chambered, making the weapon ready to fire, in a second or less. This evidence, together with Guerra's repeated threats to kill Morales and Officer Castano, is sufficient to allow a rational jury to find beyond a reasonable doubt that Guerra had both the ability and a specific intent to kill Officer Castano. We overrule Guerra's legal sufficiency point. *See Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App.) (in legal sufficiency review, appellate court looks at all evidence in light most favorable to verdict and determines whether any rational trier of fact could have found elements of offense beyond a reasonable doubt), *cert. denied*, 546 U.S. 962 (2005). We also overrule Guerra's factual sufficiency point. The evidence supporting the verdict is not so weak that the verdict seems clearly wrong and manifestly unjust, and Guerra has not pointed to any evidence that outweighs the evidence supporting the verdict.[3] *See Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (appellate court reverses for factual insufficiency only if evidence supporting verdict is so weak that verdict is clearly wrong and manifestly unjust or if evidence supporting verdict is outweighed by great weight and preponderance of evidence).

### LESSER INCLUDED OFFENSE

Guerra next contends he was entitled to a jury instruction on the lesser included offense of terroristic threat. A defendant is entitled to a jury charge on a lesser included offense if he makes

---

[3] Guerra's argument that he was not capable of firing the weapon is premised on misstatements of the record. First, Guerra states "[n]either Castano nor Morales saw the magazine loaded into the weapon." To the contrary, Morales testified "I saw a magazine inside the gun." Guerra also states, without citation to the record, "Castano observed the weapon as it was coming out of the Appellant's pocket and there was no magazine loaded into the weapon." However, Officer Castano testified he "never saw the weapon completely out of [Guerra's] pants until it was on the ground." Finally, Guerra refers to Officer Castano's testimony that he could see the ejection port of the weapon in Guerra's pants while they were struggling. Guerra then states the ejection port "is where the magazine would be loaded," and concludes the magazine was not inserted in the weapon when it was in Guerra's pants. Again, Guerra is mistaken about the evidence. Immediately after testifying he could see the ejection port, Officer Castano explained that the ejection port is where the casing comes out after the weapon is fired.

a proper request for an instruction on a lesser-included offense and if there is "'some evidence' that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Flores v. State*, 245 S.W.3d 432, 439 (Tex. Crim. App. 2008).

An offense is a lesser included offense if the elements of the lesser offense are "established by proof of the same or less than all the facts required to establish the offense charged." TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (Vernon 2006); *see Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007). The essential elements of attempted capital murder as charged in the indictment against Guerra are: (1) Guerra, (2) acting with the specific intent to kill Officer Castano, (3) while Officer Castano was discharging a lawful duty, (4) knowing Castano was a peace officer, (5) committed an act amounting to more than mere preparation that tended but failed to effect the offense of capital murder. *See* TEX. PENAL CODE ANN. § 15.01(a) (Vernon 2003); § 19.03(a)(1) (Vernon Supp. 2008). The elements of terroristic threat as they would apply in this case are: (1) Guerra, (2) with the intent to place Officer Castano in fear of imminent serious bodily injury, (3) threatened Officer Castano with a offense involving violence. *See* TEX. PENAL CODE ANN. § 22.07(a)(2) (Vernon Supp. 2008).

Guerra argues there is some evidence his only intent was to place officer Castano in fear of imminent serious bodily injury. His argument is based on his view that the evidence demonstrated the weapon was not capable of being fired and thus Guerra could not have formed an intent to kill. As discussed above, the evidence demonstrates the weapon could have been fired. Further, the fact no round was chambered in the weapon is no evidence that Guerra's intent was only to place Officer Castano in fear of imminent serious bodily injury. Although the evidence may have shown Officer Castano was in fear he would suffer death or serious bodily injury at Guerra's hands, there is no

evidence Guerra's intent was simply to place Officer Castano in fear of serious bodily injury rather than to kill Officer Castano.

Without deciding whether terroristic threat may be a lesser offense of attempted capital murder, we hold Guerra was not entitled to the requested jury charge because there was no evidence that if guilty, Guerra was guilty only of terroristic threat. Guerra's second point of error is overruled.

### READING OF TESTIMONY TO JURY

In his final point of error, Guerra complains the trial court abused its discretion by reading testimony to the jury during its deliberations. After deliberations began, the jury asked to have some of Morales and Officer Castano's testimony read to them. The trial court instructed the court reporter to locate the relevant testimony and print the testimony for review by the attorneys. When the trial court asked the parties if they had any objection, Guerra's counsel stated, "We don't object. We believe it's an appropriate response." Because Guerra did not object to the testimony being read back to the jury, he failed to preserve his complaint for appellate review. *See* TEX. R. APP. P. 33.1.

The judgment of the trial court is affirmed.

Steven C. Hilbig, Justice

DO NOT PUBLISH